

**HELEN F. DALTON & ASSOCIATES, P.C.**
ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

May 5, 2023

<u>**Via ECF**</u>
The Honorable Judge Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11722

Re: <u>Mendoza v. Seatide Fish & Lobster, Inc., et. al.</u>
EDNY Civil Case No.: 22-CV-5045 (VMS)

Dear Judge Scanlon:

Our office represents Jose Efrain Mendoza ("Plaintiff" or "Sultan") and we submit this motion jointly with counsel for Seatide Fish & Lobster, Inc. and Paul Oliveri (collectively, "the Defendants") to request the Court's approval of the settlement agreement ("Settlement Agreement"), between the parties. The Settlement Agreement, attached hereto as **Exhibit 1**, memorializes the agreed upon terms during the parties' March 28, 2023 and April 5, 2023 Court-annexed mediations.[1]

The parties provide the following information in support of the request for Court approval of the Settlement Agreement pursuant to Your Honor's standard Order for *Cheeks* approval:

**1) <u>The Plaintiff's estimates of full anticipated recovery if Plaintiff had received a favorable outcome at trial:</u>**

**Plaintiff's Position:**

Plaintiff commenced this collective action on August 25, 2022, to recover damages as a result of the Defendants' alleged failure to pay Plaintiff overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiff also sought statutory damages resulting from Defendants' alleged WTPA violations under

---

[1] Please note that the attached Settlement Agreement is partially executed by Plaintiff. Defendants are in the process of executing the Agreement. In order to comply with the deadline set by the Court, we provide the partially executed Agreement and can supplement this motion with a fully executed Agreement by Monday, May 8, 2023.

the NYLL for failure to provide the Plaintiff with any written wage notice as required by NYLL § 195(1); and failure to provide Plaintiff with NYLL-compliant wage statements as mandated by NYLL § 195(3), *et seq*.

Under the FLSA and NYLL, Plaintiffs' federal and state law claims are subject to statute of limitations periods of 3 and 6 years from the date of the filing of the Complaint, respectively. This Complaint was filed in August 2022. As such, the relevant statutory period for Plaintiffs' claims asserted herein encompass the entirety of the period spanning from August 2016 through June 2022, when Plaintiff's employment ended (hereinafter, the "relevant statutory period.").

Plaintiff alleged that he regularly worked approximately fifty-six (56) hours per week during the relevant statutory period but was paid a flat weekly salary that did not properly compensate him when he worked in excess of 40 hours per week. Plaintiff alleged that he was paid weekly salaries of: $650.00 per week from in or around August 2016 until in or around December 2017; $750.00 per week from in or around January 2018 until in or around December 2018; and $800.00 per week from in or around January 2019 until in or around June 2022.

As a result, Plaintiff alleged approximately $139,000.00 in alleged unpaid overtime wages, if Plaintiff were 100% successful on his claims, including establishing that he worked fifty-six (56) hours per week each and every week of the six-year period in question. If Plaintiff also prevailed on his claim for liquidated damages and statutory penalties, Plaintiff's full anticipated recovery could have been up to $289,000.00. As such, a reasonable range of recovery would have been between $0.00 and $289,000.00 and the settlement figure here falls squarely within that range when accounting for the factual disputes over Plaintiff's hours, the records produced by Defendants, Defendants' financial status, and the risks inherent in continued litigation.

**Defendants' Position:**

Plaintiff worked as a delivery person for Seatide between July 2016 and June 2022. Plaintiff was paid a flat weekly rate for approximately 40 hours of work per week. Plaintiff did not punch in and out using a time clock. As a delivery driver, he would pick up Seatide's delivery truck at a parking lot in Queens, usually 2430 85th St., East Elmhurst, NY 11370. Four days per week, Plaintiff picked up the truck at approximately 3:30 AM and made deliveries until approximately 1 PM when he would return the truck. Plaintiff had to stop work no later than 1 PM to attend to personal responsibilities.

In May of 2022, Defendants opened a new location in Hunts Point in the Bronx (800 Food Center Dr., Bronx, NY 10474). This new location is part of a wholesale seafood distribution facility, which enabled Seatide to receive deliveries directly from boats and distribute from that location, obviating the need for Plaintiff to pick up the truck from a lot in Queens at 3 AM. As a result, starting in May of 2022, Plaintiff's workday shifted to begin around 6 AM and finish after 2 PM. With this new schedule, Plaintiff was unable to

leave work at 1 PM. Plaintiff quit shortly after Seatide moved to the new location, citing the schedule change as his reason for leaving the job he held for six years.

Defendants alleged that Plaintiff could not met his burden under the FLSA and NYLL of establishing his entitlement to overtime wages. Plaintiff produced any evidence that he worked sixteen additional hours per week as alleged in Plaintiff's calculation of damages. In contrast, Defendants produced a signed acknowledgement from Plaintiff confirming that he was paid all monies owed each week from October 2019 to November 2022, and time records from May and June of 2022, towards the end of Plaintiff's employment, demonstrating no weeks with over 40 hours worked. In the absence of complete records, however, Plaintiff's recollection would be presumed correct.

## 2) **A description of the bona fide disputes or other issues that support accepting the settlement agreement:**

Although Plaintiff was confident that he could prevail on all of his claims at the time of trial, Plaintiff acknowledged the risks of continuing litigation, including the possibility of recovering a lesser amount at the time of trial. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff and the amounts paid to Plaintiff. Both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

Plaintiff accepted the settlement terms to avoid the costs and time associated with conducting depositions, engaging in potential motion practice, and preparing and appearing for a trial. Lastly, Plaintiff's preference was for a significant lump sum payment in the near future followed by an abbreviated plan that will likely see Plaintiff paid in full longer before a trial would be held in this matter. These factors favored early resolution for the Plaintiff and accepting the settlement agreement.

Defendants similarly accepted the settlement terms to avoid the costs and time associated with a protracted suit as well as eliminate the risk of a higher potential recovery in Plaintiff's favor. While Defendants were of the view that they had solid factual and legal defenses to Plaintiff's claims, Defendants also recognized that the fact-finder or this Court might not be of a similar view and that a compromise of Plaintiff's claims, and the finality derived therefrom, was in Defendants' best interests at this early stage of the litigation.

## 3) **A brief description of the settlement negotiations:**

The parties exchanged the required documentation and information pursuant to Paragraphs 1 and 2 of the Court's August 26, 2022 Order. The parties also conferred in good faith regarding potential resolution of this matter pursuant to Paragraph 3(a) in January 2023. The parties appeared before qualified and experienced mediator, Giulio Zanolla, Esq. for the Court-annexed mediation on March 28, 2023. The mediation was held via Zoom on that date with all parties and counsel present. A second mediation was held a week later on April 5, 2023 and a settlement-in-principle was reached after continued negotiations at both mediations. At all times, the parties have negotiated in good faith and

were only able to reach a settlement with the assistance of the Court-annexed mediation program.

**4) The amount of attorneys' fees and the basis for the claimed amount:**

Plaintiff's attorneys request fees equal to one-third of the settlement less their expenses incurred in litigation ("Net Settlement Amount"). The basis for this amount is the retainer agreement signed by Plaintiff with Plaintiff's attorneys and the standard request for attorneys' fees in this District.

**Settlement Amount:** $110,000.00
**Attorneys' Expenses:** $1,657.50
**Net Settlement Amount:** $108,342.50 ($110,000.00 - $1,657.50)
**Requested Attorneys' Fees:** $36,114.00 ($108,342.50 / 3)
**Total payable to Attorneys:** $37,771.00 ($36,114.00 + $1,657.00)
**Total payable to Plaintiff:** $72,229.00 ($110,000.00 - $37,771.00)

**5) A copy of the retainer agreement:**

Please see a copy of the retainer agreements attached hereto as **Exhibit 2**.

**6) A statement as to the reasonableness of the fee amounts:**

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). The Court in *Cheeks* did not assert that the Court needs to approve the attorney fee agreement in each FLSA case. The Court there denied the attorneys' fees because the attorneys were seeking to recover between 40 and 43.6% of the total payment with no justification as to why the attorneys would be entitled to an amount larger than the norm. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015)(*citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015).

Furthermore, in this very Circuit, there is case law that suggests that when FLSA actions settle early, the Court should use the percentage method as opposed to the lodestar method, due to the lodestar's potential to disincentivize settlement. *McDaniel v. Cty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005)),

The Hon. Judge Alison J. Nathan highlighted this issue in *Hyun v Ippudo USA Holdings*: "In this case, where the parties were able to settle relatively early and before any depositions occurred, *see* Dkt. No. 117 at 9, the Court finds that the percentage method, which avoids the lodestar method's potential to "create a disincentive to early settlement," *McDaniel,* 595 F.3d at 418, is appropriate. "Fee awards representing one third of the total recovery are common in this District." *Gaspar v. Pers. Touch Moving, Inc.,* No. 13-CV-

8187 (AJN), 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015). As a result, the Court finds that the requested attorneys' fees are "fair and reasonable." *Wolinsky,* 900 F. Supp. 2d at 335." *Hyun v Ippudo USA Holdings*, 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (SDNY Mar. 24, 2016). Based on this, the Plaintiffs' attorneys should be allowed to retain 1/3 of the recovery, as is typical of FLSA claims.

Here, Plaintiffs' counsel is seeking attorneys' fees to be set in the amount of 1/3 the settlement total (less expenses), pursuant to the retainer agreement entered into with the clients. Since 1/3 is the standard amount allowed to attorneys in FLSA cases, and the Plaintiffs entered into a contract for this amount with their counsel, this amount is not unreasonable, and *Cheeks* does not disagree.

Plaintiffs' counsel routinely enters into the same agreement as to attorneys' fees with hundreds of clients they have represented in similar FLSA actions and this arrangement has repeatedly been approved by this Court.

### 7) **A description of Plaintiff's counsel's experience and focus in this District:**

Roman Avshalumov has been an attorney for over fifteen years, and is admitted to practice in New York and New Jersey, as well as the EDNY, SDNY, and District of New Jersey. He has represented both plaintiffs and defendants in labor law actions. Mr. Avshalumov has tried numerous labor/employment cases and has settled over a hundred more. He has also tried over 50 personal injury and employment actions. Mr. Avshalumov is the senior managing attorney at Helen F. Dalton & Associates, P.C., where he oversees all litigation at the firm, and has done so for over a decade.

James O'Donnell has been an attorney for eight years and is admitted to practice in New York as well as the EDNY and SDNY. Mr. O'Donnell is the head of the labor law practice group and managing attorney at Helen F. Dalton & Associates, P.C. and oversees all labor and employment matters and litigation at the firm. Mr. O'Donnell has exclusively worked on employment matters during his six-and-a-half-plus years at the firm. He has appeared on hundreds of FLSA matters in the Second Circuit, including collective actions and class actions, and has settled or otherwise resolved over three hundred employment discrimination and wage-and-hour cases in New York state and federal courts during his employment.

### 8) **An itemized list of costs to be paid by Plaintiff:**

Plaintiff's counsel requests reimbursement of $1,657.50 from the settlement proceeds. This request includes the following expenses:

- The EDNY Filing Fee: $402.00
- The Cost of the Court-annexed Mediation: $987.50
- Costs of service of the Summons and Complaint on Defendants: $268.00

In closing, the parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore request that the Court approve or so order the Settlement Agreement.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.
*Attorney for Plaintiff*